UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GARY JET CENTER, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 2 13CV 453 |
| v. | ) |
| | ) |
| GARY/CHICAGO INTERNATIONAL | ) |
| AIRPORT AUTHORITY, | ) |
| CORNELL COLLINS, | ) |
| MARION J. JOHNSON, | ) |
| SILAS WILKERSON, | ) |
| ROSS AMUNDSON, and | ) |
| NICOLE THORN, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND JURY DEMAND

For its complaint against the Defendants, Gary/Chicago International Airport Authority ("Airport Authority"); and Cornell Collins, Marion J. Johnson, Silas Wilkerson, Ross Amundson, and Nicole Thorn (collectively, the "Old Board"), Plaintiff Gary Jet Center, Inc. ("Gary Jet Center") states as follows:

### INTRODUCTION

1. The Airport Authority is the municipal entity that controls the Gary/Chicago International Airport (the "Gary Airport"). The Airport Authority exercises the sole power to determine who can use the Gary Airport and on what terms.

2. To mitigate the Airport Authority's otherwise unbridled power—and to ensure that the Gary Airport remains open to all who wish to use it on fair terms—both federal law and

Gary Jet Center's contract with the Airport Authority require the Airport Authority to create and maintain a level playing field for fixed based operators ("FBOs") at the Gary Airport.

3. The Airport Authority created that level playing field when it adopted the FBO Regulations in 1990. The FBO Regulations ensure that FBOs are subject to the same rules and obligations and, therefore, can compete evenly and fairly at the Gary Airport.

4. The Airport Authority has authorized two FBOs, Gary Jet Center and East Lake Management and Development Corporation ("East Lake"), to supply fuel for aircraft using the Gary Airport. Because they are authorized to sell fuel, the FBO Regulations classify Gary Jet Center and East Lake as "FBO-As"; both Gary Jet Center and East Lake must therefore follow the same rules for FBO-As as set forth in the FBO Regulations.

5. Recently, however, the Old Board of the Airport Authority, acting at the direction of its consultants, John Clark, Al Stanley, and their company JClark Aviation Group LLC, voted to exempt East Lake from the rules that generally apply to all FBO-As operating at the Gary Airport.

6. The Old Board had no legitimate justification, and no rational basis, for exempting East Lake from those generally applicable rules.

7. The Airport Authority's decisions to exempt East Lake from complying with the rules governing FBO-As at the Gary Airport creates an unfair, and unlevel, playing field. It gives East Lake an unfair and illegal economic advantage over Gary Jet Center and is causing Gary Jet Center economic harm.

8. This illegal economic discrimination in favor of East Lake is also causing economic harm to the Gary Airport, which is losing significant revenue that the Airport Authority should be collecting from East Lake were it not for the Airport Authority's decision to

waive East Lake's duty to comply with the Gary Airport's generally-applicable minimum requirements for FBO-As.

9. The Airport Authority's improper favoritism towards East Lake and unjust discrimination against Gary Jet Center breaches the parties' Lease and violates the Equal Protection Clause of the United States Constitution.

10. It also jeopardizes the Gary Airport's ability to continue to receive $6 million per year in federal grants because the FAA has expressly conditioned any future funding for the Gary Airport on the Airport Authority's compliance with certain "assurances," which expressly prohibit the Airport Authority from practicing the exact form of economic discrimination that it is now visiting upon Gary Jet Center.

11. In order to prevent this from happening, and to end the unfair discrimination that Gary Jet Center is currently suffering, the Airport Authority must immediately require East Lake to cease operating as an FBO-A until it meets all of the requirements for an FBO-A at the Gary Airport.

12. Gary Jet Center therefore seeks preliminary and permanent injunctive relief against the Airport Authority. Gary Jet Center requests that this Court immediately direct the Airport Authority to require that East Lake cease its activities as an FBO-A, including directing East Lake to stop selling aviation fuel, until East Lake complies with all of the regulations that apply to FBO-As at the Gary Airport.

## PARTIES AND JURISDICTION

13. Plaintiff Gary Jet Center is an Indiana corporation with its principal place of business in Gary, Indiana.

14. Defendant Airport Authority is a municipal corporation under Indiana law that may sue and be sued under Indiana Code § 8-22-3-11(1). The Airport Authority's principal place of business is in Gary, Indiana. The Airport Authority owns and operates the Gary Airport in Lake County, Indiana.

15. Under Indiana law, the Airport Authority Board is the governing body of the Airport Authority and, as the governing body, has policymaking authority for the Airport Authority.

16. Defendants Silas Wilkerson, Marion J. Johnson, Ross Amundson, Cornell Collins, and Nicole Thorn are citizens of Indiana who were members of the previous Airport Authority Board and who voted to approve the Airport Authority's agreements with East Lake. Gary Jet Center refers to them collectively in this Complaint as the "Old Board."

17. This Court has subject-matter jurisdiction over Gary Jet Center's claims under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367:

   a) This Court has subject-matter jurisdiction over Gary Jet Center's claim asserting that the Airport Authority violated 42 U.S.C. § 1983 under 28 U.S.C. § 1343(a)(3); and

   b) This Court has subject-matter jurisdiction over Gary Jet Center's claim asserting that the Airport Authority breached its lease with Gary Jet Center under 28 U.S.C. § 1331 because that claim turns on the interpretation of federal law, namely, the Sponsor's Assurances under 49 U.S.C. § 47107, which were incorporated into Gary Jet Center's Lease with the Airport Authority. In the alternative, this Court has subject-matter jurisdiction over that claim under 28 U.S.C. § 1367 because it arises from the same set of operative facts as Gary Jet Center's § 1983 claim.

18. The Court has personal jurisdiction over all the parties to this action.

19. Venue of this action in the Northern District of Indiana, Hammond Division is based on 28 U.S.C. § 1391(b) because the Airport Authority resides in this District. In addition, all or a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

**A. FBOs**

20. This case involves the Airport Authority treating similarly situated FBOs differently, in violation of federal law, the Airport Authority's Lease with Gary Jet Center, and the Airport Authority's own FBO Regulations.

21. An FBO operates like a service station for aircraft owners. Among other services, an FBO provides fuel, hangar space, and maintenance for a wide variety of airplanes and helicopters.

22. In addition, an FBO provides support services to general aviation (i.e. non-commercial) operators at a public airport like the Gary Airport.

23. "FBO-A" is the highest classification for FBOs at the Gary Airport. That classification is reserved for full-service FBOs that provide everything from aircraft fueling and repairs to charter services, flight instruction, and aircraft rentals. Only an FBO-A can sell fuel at the Gary Airport.

24. The FAA typically regulates the services an FBO provides.

**B. Federal law prohibits a sponsor like the Airport Authority from taking actions that cause unjust economic discrimination among similarly situated FBOs.**

25. Because it runs the Gary Airport and has sought federal aid on the Airport's behalf, the Airport Authority is the Airport's "sponsor." *See* 14 C.F.R. § 152.3.

26. The Airport Authority relies on federal grant assistance to develop and improve the Gary Airport. Since 2006, the Federal Aviation Administration ("FAA") has awarded the Airport Authority grants of up to $6 million per year to use for airport improvements through 2015.

27. Because the Gary Airport has received significant federal financial assistance, the Airport Authority must operate the Airport in accordance with the Airport and Airway Improvement Act of 1982, 49 U.S.C § 47101, *et seq*. That Act is the latest in a line of federal laws that have provided federal funding for airport development, which first began with the Federal Airport Act of 1946.

28. In passing those laws, Congress intended that public airports that received federal funds would be maintained in a safe and serviceable condition and would be available for all types, kinds, and classes of aeronautical activity.

29. To accomplish this goal, Congress and the FAA, as a condition to receiving federal funds, require airport sponsors to make written assurances ("sponsor's assurances") that (among other things) the sponsor (1) will make the airport available for public use on reasonable conditions and without unjust economic discrimination and (2) will subject FBOs who use the airport in a similar manner to the same charges. 49 U.S.C. § 47107(a)(1), (a)(5).

30. A copy of those sponsor's assurances is attached to this Complaint as Exhibit A.

31. The sponsor's assurances are intended to protect federal taxpayers' investment in an airport. They provide a basic set of rules to help the sponsor meet its federal obligations. They also ensure that a level playing field exists for FBOs that provide aeronautical services to the public. And they safeguard the safety of those who use the sponsor's airport.

32. For the Airport Authority, complying with the sponsor's assurances in Exhibit A is not just a necessary condition for continued federal funding; it is also a contractual duty that the Airport Authority owes to Gary Jet Center. In Article II.A of the parties' Lease, the Airport Authority "covenant[ed] and agree[d] that at all times during the term of the lease, it will operate and maintain the Airport as a public airport consistent with and pursuant to the Sponsor's Assurance[s] given by the AUTHORITY to the United States government."

33. Among the assurances that a sponsor like the Airport Authority must make to the federal government is Grant Assurance 22. *See* Exhibit A at 10.

34. Grant Assurance 22 specifically prohibits unjust economic discrimination among similarly situated FBOs. It requires a sponsor to treat similarly situated FBOs the same. *Id.* at 10. Among other things, Grant Assurance 22 requires a sponsor to subject all FBOs to the same rates, fees, rentals, and other charges as are uniformly applicable to all other FBOs making the same or similar uses of such airport and utilizing the same or similar facilities. *See id.* (paragraphs a. and c.).

35. If a sponsor were to do otherwise, and subject similarly situated FBOs to disparate economic treatment, then the sponsor would be breaching its federal grant assurances—and thereby endangering future federal funding for the sponsor's airport.

C. **The FAA requires sponsors to apply the minimum standards that the sponsors develop for FBOs objectively and uniformly to all similarly situated FBOs.**

36. To ensure that sponsors like the Airport Authority, who receive federal funds, do not unjustly discriminate among FBOs, the FAA encourages sponsors to develop minimum standards for FBOs.

37. Those minimum standards should promote safety, protect airport users from unlicensed and unauthorized services, ensure that adequate services are available to all airport users, and maximize operational efficiency.

38. The FAA is very clear that, "[o]nce an airport sponsor [i.e. the Airport Authority] has established minimum standards, it should apply them objectively and uniformly to all similarly situated on-airport aeronautical service providers. The failure to do so may result in a . . . a finding of unjust economic discrimination for imposing unreasonable terms and conditions for airport use." *Minimum Standards for Commercial Aeronautical Activities*, FAA Advisory Circular No. 140/4190-7 (Aug. 28, 2006).

39. A sponsor that imposes unreasonable and discriminatory minimum standards for airport operations risks violating its federal sponsor's assurances, which again, may result in the airport losing all federal funding.

**D.  The FBO Regulations contain the minimum standards for FBOs that the Airport Authority has adopted.**

40. As recommended by the FAA, in 1990, the Airport Authority adopted minimum standards for FBOs operating at the Gary Airport (the "FBO Regulations"). Exhibit B to this Complaint is a copy of the FBO Regulations.

41. These FBO Regulations—like all other generally applicable laws and regulations—are to "be complied with by all persons whose activities come within their scope." Exhibit B at 1 (Section 1).

42. The FBO Regulations are the very type of minimum standards that the FAA has cautioned must be reasonable and applied in such a way to prevent unjust economic discrimination among similarly situated FBOs.

43. The FBO Regulations classify FBOs at the Gary Airport by the scope services they provide.

44. The lowest classification, FBO-F, is for FBOs that provide only repairs for avionics, while the highest classification, FBO-A, is for full-service FBOs that provide everything from aircraft fueling and repairs to charter services, flight instruction, and aircraft rentals. Exhibit B at 2–9 (Section 7).

45. Under the FBO Regulations, only an FBO-A may provide fueling services; no other FBO classification allows for the sale of fuel. *See id.*

46. To be an FBO-A, an FBO must meet all the requirements of the other FBO classifications. *Id.* at 2 (Section 7(a)(2)).

47. The FBO Regulations incorporate the federal aviation rules and regulations applicable to FBOs. According to the FBO Regulations, "[a]ny violation of a federal, state, or local law or regulation shall be deemed a violation of these rules and regulations." *Id.* at 10 (Section 11).

48. Besides complying with the requirements of all FBO classifications and applicable federal laws, the FBO Regulations require an FBO-A to operate from a building that is at least 10,000 square feet in size. *Id.* at 2 (Section 7(a)(1)).

49. The FBO Regulations also require FBO-As to collect certain fees from their customers that the FBO-As must remit to the Authority.

50. One of the required fees is a fuel flowage fee, which an FBO-A must charge on each gallon of aviation fuel it sells. *Id.* at 3 (Section 7 (a)(6)).

51. Another fee is a landing fee, which the FBO-A must remit to the Airport Authority monthly. *Id.* at 2 (Section 6).

52. A third fee that the Airport Authority has contractually required its FBO-As to collect is a parking fee, which the FBO-A must collect from its customers. Exhibit C at 9.

53. In addition to those requirements, the FBO Regulations require any FBO-A to maintain a minimum of 35,000 gallons of aboveground fuel storage. Exhibit B at 2 (Section 7(a)(5)).

54. The FBO Regulations require aboveground storage because federal law, the National Fire Code, and best practices in the aviation industry do not permit truck-to-truck refueling due to the safety issues inherent with this practice.

### E. Gary Jet Center

55. Gary Jet Center is an FBO at the Gary Airport. It began operations in 1991 and now employs more than 48 people.

56. Gary Jet Center holds an FAA maintenance repair station certificate and an FAA Part 135 Charter Certificate. It manages a number of jet aircraft, operates a maintenance and repair station, provides fuel to aircraft using the airport, and offers a number of other aeronautical services.

57. Because Gary Jet Center offers a full line of services to private and commercial aircraft, the FBO Regulations classify it as an FBO-A.

### F. Gary Jet Center's Lease with the Authority

58. In 2007, the parties entered into a First Amended Lease Agreement (the "Lease"), the agreement that currently governs the contractual relationship between the parties. The Lease has a term of 39 years and expires on December 31, 2045. Exhibit C contains a copy of the Lease.

59. The Lease states that the "purpose of the Lease is to grant [Gary Jet Center] the right and privilege to conduct business as a Full Service Fixed Base Operator, Class FBO-A." Exhibit C at 3.

60. The Lease also makes clear that the rights given to Gary Jet Center to operate as an FBO-A are non-exclusive as required by federal law. *Id.* at 21.

61. The Lease incorporates the Airport Authority's FBO Regulations and requires that Gary Jet Center comply with them. *Id.* at 3. The Lease states that Gary Jet Center "shall provide all of the services required for the operation of aircraft or which are required for the safety or convenience of the operators of aircraft as more specifically set forth in the Fixed Based Operators Rules and Regulations of the airport." *Id.*

62. Compliance with the FBO Regulations requires that Gary Jet Center collect fuel flowage fees and landing fees from its customers and remit these fees to the Airport Authority. In addition, the Airport Authority, through its Lease with the Gary Jet Center, requires Gary Jet Center to collect parking fees from its customers as well, which Gary Jet Center must remit to the Airport Authority.

63. In addition to collecting landing fees, fuel flowage fees, and parking fees, the Lease also requires Gary Jet Center to pay "Supplemental Rent" to the Airport Authority on an annual basis calculated as "ten (10) percent of the amount of all Fuel Flowage Fees, Landing Fees and Parking Fees [Gary Jet Center] collects as provided for herein." *Id.* at 8.

64. In consideration for Gary Jet Center's promises under the Lease, the Airport Authority promised Gary Jet Center that the Airport Authority would comply with the sponsor's assurances that the Airport Authority made to the federal government.

65. In Article II.A of the Lease, the Airport Authority "covenant[ed] and agree[d] that at all times during the term of the lease, it will operate and maintain the Airport as a public airport consistent with and pursuant to the Sponsor's Assurance[s] given by the AUTHORITY to the United States government under the Federal Airport Act." *Id.* at 4. The Lease thus incorporates the federal standards contained in the sponsor's assurances, which (among other things) forbid a sponsor from giving special treatment to any particular FBO.

**G. Gary Jet Center has complied with the FBO Regulations and the other requirements the Airport Authority has imposed in the Lease.**

66. Gary Jet Center has complied with the FBO Regulations and the other requirements in its Lease (and the predecessor to the Lease) ever since it began operations in 1991.

67. In compliance with the FBO Regulations, Gary Jet Center obtained certificates from the FAA's South Bend Flight Standards District Office for charter services and a repair station. Gary Jet Center has also collected fuel flowage and landing fees from its customers as the FBO Regulations require, and has remitted those funds to the Airport Authority. Moreover, Gary Jet Center has collected parking fees from its customers, which Gary Jet Center has paid to the Airport Authority as well. In addition, Gary Jet Center has also paid all required Supplemental Rent during the lease term.

68. Gary Jet Center has further complied with the FBO Regulations by maintaining the required aboveground fuel storage; Gary Jet Center has not conducted truck-to-truck refueling. Currently, Gary Jet Center uses and maintains the aviation fuel storage tanks located at the Gary Airport (the "Fuel Farm"), which provide more than the 35,000 gallons of aboveground storage required by the FBO Regulations.

## H. The Airport Authority has unlawfully exempted East Lake from the FBO Regulations and the other requirements it imposes on Gary Jet Center, the only other FBO-A at the Gary Airport.

69. East Lake is a Chicago-based firm that provides a full range of real estate services. East Lake had no prior experience serving as an FBO before it signed a contract with the Airport Authority in Summer 2013.

70. In June 2013, the Old Board of the Airport Authority approved a Ground Lease Agreement ("Ground Lease") between the Airport Authority and East Lake. A true and correct copy of the Ground Lease is attached as Exhibit D.

71. The Old Board approved the Ground Lease and other contracts with East Lake without any competitive bidding and without any opportunity for public comment.

72. Instead, the Old Board relied heavily on the recommendation of outside consultants, John Clark and Al Stanley who are principals of JClark Aviation Group LLC. The Old Board had awarded Clark's firm a consulting contract without competitive bidding. Clark collected more than $165,000 in fees billed to the Airport Authority. That contract expired in Fall 2013 and was not renewed by the new Airport Authority Board.

73. Clark and Stanley developed the unlawful plan to economically discriminate in favor of East Lake by exempting East Lake from the rules and regulations governing FBOs at the Gary Airport. And Clark and Stanley caused the Airport Authority to violate Gary Jet Center's constitutional rights and breach the Authority's Lease with Gary Jet Center.

74. Clark and Stanley brought East Lake to the Airport Authority. And Clark and Stanley negotiated the Airport Authority's contracts with East Lake.

75. Because East Lake is authorized to sell fuel at the Gary Airport, the FBO Regulations classify East Lake, like Gary Jet Center, as an FBO-A. East Lake must therefore meet all the requirements of a full-service FBO-A under the FBO Regulations.

76. But East Lake is not currently meeting those requirements. In fact, it is hardly meeting *any* of the FBO Regulations; the Airport Authority, at the urging of Clark and Stanley, has unlawfully exempted East Lake from most of the FBO Regulations' requirements, as well as from the other obligations the Airport Authority has imposed on Gary Jet Center.

77. Here are some examples of the Airport Authority's failure to apply the FBO Regulations to East Lake:

- An FBO-A must operate out of a building that is at least 10,000 square feet in size. But East Lake is not currently operating out of such a building.

- An FBO-A must collect fuel flowage fees and landing fees from its customers, but the Airport Authority has unfairly relieved East Lake from collecting those fees.

- An FBO-A must collect parking fees from its customers, but the Airport Authority has failed to require East Lake to collect those same fees.

- An FBO-A is prohibited from conducting truck-to-truck refueling, a practice that falls below industry standards, poses a serious safety risk, and increases the risk of fuel contamination. But the Airport Authority permits East Lake to carry out that unsafe practice.

- An FBO-A must maintain at least 35,000 gallons of aboveground fuel storage. Yet the Airport Authority has relieved East Lake of that requirement under the FBO Regulations as well.

- The Airport Authority mandated that Gary Jet Center pay Supplemental Rent based on the fees it collects. But not East Lake.

- Lastly, and perhaps most concerning, the Airport Authority's contracts with East Lake *do not even require East Lake to comply with the FBO Regulations.* When it approved its contracts with East Lake, the Airport Authority affirmatively *waived* East Lake's compliance with the FBO Regulations for a period of at least nine months. The Airport Authority's contracts with East Lake do not even mention the FBO Regulations. Instead, they refer to certain Minimum Standards and Regulations, which (so far as Gary Jet Center knows) do not even exist.

78. The Old Board, acting with Clark and Stanley, is responsible for the unlawful exemptions that the Airport Authority has granted to East Lake, which result in unfair economic discrimination. The Old Board, at Clark and Stanley's direction, approved the Airport Authority's contracts with East Lake; and the Old Board, again acting at Clark and Stanley's direction, voted to waive most of the FBO Regulations as they apply to East Lake.

79. By waiving most of the FBO Regulations that would otherwise apply to East Lake, the Airport Authority has allowed East Lake to cherry-pick the FBO-A requirements that it likes (such as the requirement to sell fuel) while ignoring the rest.

80. The Airport Authority's unlawful favoritism towards East Lake has given East Lake an unfair, and illegal, competitive advantage over Gary Jet Center.

81. The Airport has given East Lake a massive, and unearned, upper hand in the FBO-A business over Gary Jet Center, which is precisely the type of economic discrimination among aeronautical service providers that federal law (in the form of the sponsor's assurances) forbids.

I.    **Additional special economic favors the Airport Authority extends to East Lake**

82. The Airport Authority's special treatment of East Lake extends beyond just its refusal to even-handily apply all the FBO Regulations and the obligations the Airport Authority imposes on Gary Jet Center under the Lease.

83. The Old Board of the Airport Authority approved a Service Agreement with East Lake regarding the T-Hangars at the Gary Airport. The Airport Authority awarded this Service Agreement to East Lake without engaging in a public bidding process or receiving public input.

84. Before entering into the Service Agreement, the Airport Authority managed the T-Hangars—which were built with public funds—and collected 100% of the revenue.

85. But now under the Service Agreement, the Airport Authority is giving East Lake 20% of the rental revenue without receiving any reasonable value in return. East Lake is under no obligation to conduct repairs or incur any costs; and the Airport Authority is reimbursing East Lake for all expenses it incurs under the Service Agreement. So it is all reward and no risk for East Lake at the expense of the Gary Airport and the taxpayers.

86. Another example of the Airport Authority's unfair preference towards East Lake is the option the Airport Authority has granted East Lake to develop 87,120 sq. ft. of land adjacent to the Boeing Hangar. The Old Board granted that option—which has no finite term—without public notice and without the Airport Authority receiving any consideration in return. It stands in stark contrast to the precedent the Airport Authority set when it required Gary Jet Center in 2006 to pay $15,000 for a one-year option to develop land that is now Gary Jet Center's Hangar 2.

87. Clark and Stanley promoted both the Service Agreement and the free development option that the Airport Authority granted East Lake. They presented those deals to the Old Board, and they obtained the Old Board's consent to both of them.

**J.     The Airport Authority's unlawful economic favoritism is hurting both Gary Jet Center and the Gary Airport.**

88. As the Service Agreement and East Lake's free option to develop land adjacent to the Boeing Hangar show, the Airport Authority's inequitable economic favoritism towards East Lake isn't just hurting Gary Jet Center.

89. The Airport Authority is depriving the Gary Airport (and the taxpayers) of substantial revenue it should be receiving from East Lake for hangar rental, supplemental rent, fuel flowage fees, landing fees, parking fees, and granting East Lake a valuable option to develop land.

90. Moreover, by allowing truck-to-truck refueling, the Airport Authority is endangering the safety of all those who use the Gary Airport, especially those who unknowingly purchase jet fuel from East Lake that has not been properly filtered.

91. Lastly, the Airport Authority is endangering the Gary Airport's ability to receive federal funds by violating the sponsor's assurances the Airport Authority made to the federal government.

92. The economic harm the Airport Authority's actions are causing Gary Jet Center and the Gary Airport will continue unless this Court orders the Airport Authority to stop its unlawful economic discrimination in favor of East Lake.

## CLAIMS FOR RELIEF

### COUNT I – BREACH OF CONTRACT

93. Gary Jet Center incorporates the allegations above into this paragraph.

94. The Lease is a valid and enforceable contract between Gary Jet Center and the Airport Authority.

95. Gary Jet Center has fulfilled all of its obligations under the Lease.

96. The Airport Authority has breached the Lease by, among other things, breaching its covenant in Article II.A of the Lease to operate and maintain the Gary Airport "consistent with and pursuant to the Sponsor's Assurance[s] given by AUTHORITY to the United States government."

97. As the facts set forth above demonstrate, the Airport Authority is breaching the following sponsor's assurances (among others) that the Airport Authority made to the United States Government as a condition to receiving federal funding:

a) Sponsor's Assurance 19, which requires the Airport Authority to operate the Gary Airport at all times in a safe and serviceable condition;

b) Sponsor's Assurance 22a, which requires the Airport Authority to make the Gary Airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds, and classes of aeronautical activities;

c) Sponsor's Assurance 22c, which requires the Airport Authority to subject each FBO at the Gary Airport to the same rates, fees, rentals, and other charges as are uniformly applicable to all other FBOs making the same or similar uses of the airport and utilizing the same or similar facilities;

d) Sponsor's Assurance 22h, which allows the Airport Authority to establish reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport;

e) Sponsor's Assurance 23, which prohibits the Airport Authority from providing an uneven playing field at the Gary Airport; *and*

f) Upon information and belief, Sponsor's Assurance 34, which requires the Airport Authority to comply with all current FAA Advisory Circulars.

98. As a result of the Airport Authority's breaches of the Lease, Gary Jet Center has suffered damages, as well as irreparable harm that cannot be remedied by monetary damages alone.

## COUNT II – § 1983

1. Gary Jet Center incorporates the allegations above into this paragraph.

2. The Old Board of the Airport Authority, acting under color of state law proximately caused Gary Jet Center to be deprived of a federally protected right, namely, the

right to the equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

3. Because the Old Board, the policymaker for the Airport Authority, caused this violation of Gary Jet Center's federal rights, the Airport Authority itself is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and its progeny.

4. As a result of the Defendants depriving Gary Jet Center of the equal protection of the laws, Gary Jet Center has suffered damages, as well as irreparable harm that cannot be remedied by monetary damages alone.

WHEREFORE, Gary Jet Center requests that the Court enter judgment in Gary Jet Center's favor and against the Defendants and award Gary Jet Center the following relief:

   a) preliminary and permanent injunctive relief enjoining the Airport Authority from breaching its Lease with Gary Jet Center, from economically discriminating against Gary Jet Center, from violating Gary Jet Center's federal rights, and from applying the FBO Regulations in any manner other than uniformly to all FBOs falling within the same FBO classification;

   b) damages in an amount to be proved at trial;

   c) other equitable relief consistent with the above;

   d) interest as allowed by law, court costs, and attorneys' fees under Article XIV.C of the Lease and 42 U.S.C. § 1988; and

   e) all other just and proper relief.

### DEMAND FOR JURY TRIAL

5. Gary Jet Center hereby demands a jury trial on all issues so triable.

Respectfully submitted,

LADUE CURRAN & KUEHN LLC

*[signature]*

John D. LaDue (19039-71)
John A. Conway (27712-71)
Paul Edgar Harold (25917-71)
200 First Bank Building
205 West Jefferson Boulevard
South Bend, Indiana 46601
Telephone: (574) 968-0760
Facsimile: (574) 968-0761
jladue@lck-law.com
jconway@lck-law.com
pharold@lck-law.com

*Attorneys for Plaintiff Gary Jet Center, Inc.*